IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL C. FRENCH,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-1569-L** |
| | § | |
| **MICHAELS STORES, INC.,** | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Plaintiff's Motion to Remand, filed June 8, 2012. After carefully

considering the motion, briefing, record, and applicable law, the court **grants** Plaintiff's Motion to

Remand.

**I.      Background**

On April 12, 2012,  Plaintiff Michael C. French ("French" or "Plaintiff") brought this action

against Defendants IGF International Limited, Inter-Continental Management Limited, Kleinwort

Benson Trustees (Isle of Man) Limited, Trident Trust Company (IOM) Limited (collectively,

"Trustee Defendants"), and Michaels Stores, Inc. ("Michaels") (collectively, "Defendants") in the

162nd Judicial District Court, Dallas County, Texas, seeking a declaratory judgment that he is

entitled to advancement of and indemnification for litigation expenses and attorney's fees incurred

in defending any judgment entered against him in a New York action brought by the Securities

Exchange Commission ("SEC") on July 29, 2010.  The New York action, referred to hereafter as the

"SEC litigation," was brought against French; Samuel E. Wyly; Charles J. Wyly, Jr.; and Louis J.

Schaufele III in the United States District Court for the Southern District of New York for alleged securities violations.

According to French's state court Original Petition and the SEC's July 29, 2010 Complaint in the SEC litigation, the Wylys engaged in a thirteen-year fraudulent scheme and elaborate offshore system to hold and trade millions of securities of public companies, including Michaels, without disclosing their ownership and trading of securities.  Pl.'s App. 7-10; SEC Compl. 1-11.  In the SEC Litigation, French is alleged to have used his role as the Wylys' lawyer and his director positions on three of the four company boards, including Michaels, to cover the Wylys' scheme.  In the state court action, Plaintiff also asserted related claims for specific performance, breach of trust, and breach of contract.  On the same date that the state court action was filed, a related action was brought in the Isle of Man, where the Trustee Defendants are incorporated and headquartered.  In the Isle of Man action, the Trustee Defendants seek a determination as to their rights and obligations in response to Plaintiff's demand for indemnification of legal expenses.

The case was removed by Trustee Defendants on May 18, 2012, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff moved to remand the case on June 8, 2012.  On December 7, 2012, Plaintiff and Trustee Defendants filed a Stipulation of Dismissal, dismissing with prejudice all claims against Trustee Defendants.  On the same date, Trustee Defendants filed a Notice of Withdrawal of Opposition to Plaintiff's Motion to Remand.  Michaels had filed a separate response to the motion to remand but also joined in Trustee Defendants' response to the motion.  The Trustee Defendants' withdrawal of their response and opposition to the motion to remand, however, moots the arguments raised by them.  Accordingly, these arguments are no longer before the court, and Michaels cannot rely them because it has no greater rights than Trustee

Defendants to such arguments after the withdrawal of Trustee Defendants' response in opposition to the motion to remand.  Thus, the court does not consider Trustee Defendants' withdrawn arguments in ruling on Plaintiff's Motion to Remand, except to the extent there is overlap between Trustee Defendant's and Michael's arguments.  Plaintiff's motion and Michaels' response both focus on whether Plaintiff improperly joined Michaels as a defendant in the state court action.

## II.    Standard for Improper Joinder

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005).  In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past.  Although there is no substantive difference between the two terms, 'improper joinder' is preferred."  *Id*. at 572.  Accordingly, the court uses the term "improper joinder" in this opinion.  As the party wishing to invoke federal jurisdiction by alleging improper joinder, Michaels must establish that it was joined by Plaintiff to defeat diversity of citizenship and therefore subject matter jurisdiction.  Subject matter jurisdiction based on diversity of citizenship exists only if each plaintiff has a different citizenship from each defendant.  *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988).  Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant.  *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004).  In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or

formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

"When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). As a result, the propriety of removal based on diversity jurisdiction is not affected by the dismissal of a party after the case is removed. *See Federal Savings & Loan Ins. Corp v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991), *cert. denied*, 502 U.S. 1092 (1992). Thus, the dismissal of the diverse Trustee Defendants from this action after removal does not affect the court's improper joinder analysis.

To establish improper joinder, Michaels must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Michaels does not assert fraud by Plaintiff, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312

(internal quotations and citations omitted).   "This possibility, however, must be reasonable, not merely theoretical."  *Id*.  If there is a reasonable possibility that Plaintiff can recover on any of his claims, the case must be remanded.  In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so."  *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted).

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  *Smallwood*, 385 F.3d at 573-74.

## III.   Analysis

Removal in this case and Plaintiff's Motion to Remand is based on the second prong in *Travis*, that is, whether French can establish a cause of action against Michaels in state court for indemnification and advancement of legal fees and expenses.

### A.   Whether French Released His Indemnification Claim Against Michaels

Plaintiff seeks indemnification and advancement of attorney's fees pursuant to Michaels' Restated Certificate of Incorporation and Delaware law.  Central to the parties' dispute is whether the December 21, 2000 Agreement and Release ("Release") entered between Michaels and Plaintiff encompasses Plaintiff's state claim against Michaels for indemnification and advancement of legal fees and expenses arising out of the SEC litigation.  Michaels acknowledges that its bylaws provide for "indemnification (and advancement) consistent with Delaware's General Corporations Law."

Michael's Resp. 6.  It contends, however, that French waived any such right to indemnification when he executed the Release in December 2000.  Michaels argues that the Release specifically and broadly releases Michaels from any and all claims, liabilities, obligations, of any nature whatsoever and that broad releases such as this one are generally upheld in Texas.  For support, Michaels cites *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 697 (Tex. 2000); *Memorial Medical Center v. Keszler*, 943 S.W.2d 433, 434 (Tex. 1997); and *Shanley v. First Horizon Home Loan Corporation*, No. 14-07-01023-CV, 2009 WL 4573582, at *10 (Tex. App.   Houston [14th Dist.] Dec. 8, 2009, no pet.).

Plaintiff, on the other hand, contends that the court should limit its analysis to his pleadings. Even if the Release language is considered, Plaintiff maintains that it applies only to claims he had as a consultant to Michaels and does not bar his indemnification claim as a director of Michaels.  In an affidavit, French states that he was not appointed and did not serve as a director of Michaels pursuant to the Consulting Agreement, which is the basis for the Release but instead was appointed as a director of Michaels in 1992, long before the Consulting Agreement was executed.

The Release specifically refers to the 1996 Consulting Agreement entered between French and Michaels and provides that it:

> is made into on this 21st day of December, 2000, by and Between Michaels Stores, Inc., a Delaware corporation (the "Company") and Michael C. French, an individual ("Consultant") . . . WHEREAS, Consultant has performed certain legal, financial and other strategic consulting services for the Company pursuant to that certain Consulting Agreement entered as of October 1, 1996 (the "Consulting Agreement");

Pl.'s App. 221.  The Release further states:

> Section 3.  Release by Consultant.  As a material inducement to the Company to enter this Agreement, Consultant hereby irrevocably and unconditionally releases, acquits, and forever discharges the Company . . . from any and all charges,

**Memorandum Opinion and Order – Page 6**

> complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including without limitations attorneys' fees and costs actually incurred), of any nature whatsoever (other than liabilities, claims, obligations and other rights arising solely under [the Release]), known or unknown . . ., which Consultant now has, owns, or holds, or claims to have, own, or hold, or which Consultant at any time heretofore had, owned, or held, or claimed to have, own, or hold, against the Company.

*Id*. § 3.  Section 4 of the Release dealing with Michaels' releases refers to "Consultant Releases" and similarly states that the Release was executed "[a]s a material inducement to *Consultant* to enter into this Agreement."  *Id*. § 4 (emphasis added).

Plaintiff contends that categorical releases such as this are construed narrowly under Texas law, and any claims not clearly within the subject matter of a release are not discharged even if they existed when the release existed.  Pl.'s Mot. 1 (citing *Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.*, 99 F.3d 746, 755 (5th Cir. 1996)).  Plaintiff further asserts that when a release refers to a related document, the document referenced should be taken into consideration.  *See id.* Taking into consideration the Consulting Agreement, which is referred to in the Release, Plaintiff argues that neither the Consulting Agreement nor the Release mentions Plaintiff's indemnity rights as a director of Michaels, either expressly or impliedly, and both are limited to Plaintiff's role as "Consultant" to Michaels.

Plaintiff contends that, unlike the cases cited by Defendants in which the release expressly defined the scope of the release by reference to specific defined relationships between the parties, the Release at issue mentions only Plaintiff's relationship or role as a "Consultant" to Michaels. Plaintiff asserts that there is no reference in either the Release or the Consulting Agreement to Plaintiff as a director of Michaels.  As a result, Plaintiff maintains that the Release does not clearly

and unambiguously apply to claims arising out of his relationship with Michaels and role as director, and instead applies only to his relationship and role as "Consultant."  Plaintiff further asserts that Michaels acknowledged in 2007 and 2009, long after the Release was executed, his right to indemnity as a former director and that this is evidence that the parties did not intend to discharge his right to indemnity as a director of Michaels under the 2000 Release.

Even if the Release addresses release of claims only in terms of Plaintiff's consulting role, Michaels contends that the Release nevertheless applies to Plaintiff's claims allegedly arising from his role as director because "[t]he scope of his duties as Consultant overlapped with the scope of his duties as director" and "at no time did French perform consulting services for Michaels that were unrelated to his directorship duties."  Michaels' Resp. 2-3.  Plaintiff argues that the latter statement by Michaels should be disregarded because it is conclusory and not supported by any evidence in the record.  Plaintiff maintains that when narrowly construed, the Release does not clearly and unambiguously release his indemnity claim.  Even if the Release is determined to be ambiguous, Plaintiff contends that any such ambiguity must be resolved in his favor and precludes a finding that he has no possibility of establishing a cause of action in state court against Michaels.  Additionally, Plaintiff argues that if the court determines the Release is ambiguous, evidence of the parties' conduct is relevant to resolving any ambiguity and demonstrates that Michaels' release argument was only recently fabricated and is unavailing because:

> Michaels Stores' dissembling efforts to explain away the obvious import of its correspondence with Plaintiff's attorneys in 2007 and 2009 do not refute the following critical facts. First, in April and September 2007, Michaels Stores unequivocally acknowledged the continued existence of Plaintiff's indemnity right long after the Release had been executed and long before Michaels Stores inserted a "reservation of rights" into the 2009 correspondence. Second, regardless of whether the expenses for which Michaels Stores reimbursed Plaintiff in 2007 were incurred

in connection with an SEC investigation, rather than litigation, Michaels Stores expressly reimbursed Plaintiff on the basis that he was entitled to an indemnity as a former director. Third, the payments were not "purely voluntary," as the Trustee Defendants contend; they were explicitly made in discharge of Michaels Stores' existing and continuing obligation to indemnify Plaintiff. Fourth, Michaels Stores had not asserted prior to the 2009 correspondence that Plaintiff's indemnity right had been released by the Release. Fifth, the reservation of rights contained in the July 15, 2009 letter related to Michaels Stores' position that the indemnity right ceased to apply because the focus of the underlying investigation had moved away from Plaintiff's role as director, as stated in its November 3, 2008, not because Plaintiff had released his indemnity right.

Pl.'s Reply 4-5.

Under Texas law, a release is a contract and is subject to the rules governing contract construction. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (holding that a release is a contract subject to avoidance on the same grounds as any other contract); *Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex. Civ. App.   San Antonio 1961, writ ref'd n.r.e.) (treating a release as a contract subject to rules governing contract construction).   In construing contracts, the court's primary objective is "to ascertain and give effect to the intentions of the parties as expressed in the [contract]."   *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (quotation omitted). To ascertain the parties' true intentions, the court examines "the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "A contract should be construed by determining how the reasonable person would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to be accomplished by the parties when entering into the contract." *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 128 (Tex.

App.   Houston [14th Dist.] 1997), *aff'd*, *Keck, Mahin & Cate*, 20 S.W.3d 692 (Tex. 2000) (citation and internal quotation omitted).

Rules that specifically apply to releases are also considered.  *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991).  For a release to be effective under Texas law, it must "mention" the claim to be released.  *Id.*  Claims that are "not clearly within the subject matter of the release are not discharged." *Id.*  Additionally, "general categorical release clauses are construed narrowly." *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984)). "[I]nstruments pertaining to the same transaction may be read together to ascertain the parties' intent as to the meaning of the release," even if the instruments were executed at different times and do not expressly refer to each other.  *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

As previously noted, the parties disagree over the proper interpretation of the Release. Whether a contract is ambiguous is a question of law for the court.  *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id*. When a contract is worded so that it can be given a definite legal meaning, it is unambiguous, and the court construes it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Here, the Release and Consulting Agreement are not ambiguous and deal only with the release of claims by Plaintiff in his role as "Consultant."  Although Michaels contends that Plaintiff's duties as director were the same or similar as those of consultant, there is no evidence to support Michaels' assertion in this regard.  Additionally, Michaels has cited no case, and the court was

unable to locate any, in which a Texas court has dealt with the situation at hand when an employee has multiple contractual roles and duties but releases only claims with regard to one of his roles. Evaluating all factual allegations and ambiguities in Texas law in Plaintiff's favor, the court concludes that there is a reasonable possibility that he has stated a cause of action for indemnification and advancement of legal fees against Michaels, and Michaels has failed to meet its burden of establishing that there is no possibility of recovery by French against it because of the language in the Release. *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648); *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751) ("In reviewing Defendants' claim of fraudulent joinder, the district court must evaluate all factual allegations and ambiguities in the controlling state law in favor of the plaintiff. If there is any possibility that the plaintiff has stated a cause of action against any non-diverse defendant, the federal court must conclude that joinder is proper, thereby defeating complete diversity, and the case must be remanded.") (citations omitted). Moreover, Michaels does not dispute that its bylaws provide for "indemnification (and advancement) consistent with Delaware's General Corporations Law." Michaels' Resp. 6.

### B.      Whether the SEC Litigation Involves French's Position as Director of Michaels

Michaels next contends that even if French did not release his right to indemnification, his claim for advancement of legal fees as a director of Michaels fails because "none of his actions contained in the SEC Complaint depended on his position as director. Rather, the . . . SEC Complaint concern[s] the Wylys' offshore scheme and French's role as their lawyer and the Protector of their Trusts." Michaels' Resp. 13-14. Michaels therefore contends that there is no "nexus or causal connection" between the allegations in the SEC Complaint and French's status as a director of Michaels to justify the advancement of legal fees that French seeks. *Id.* 14. Plaintiff disagrees

Memorandum Opinion and Order – Page 11

and contends that the SEC's claims against him are predicated upon his actions as both director of Michaels and Protector of the Wyly Trusts.

The court agrees with Plaintiff that this argument by Michaels is without merit. The SEC specifically alleges in its Complaint that French used his role as the Wylys' attorney *and fellow director of Michaels* to assist the Wylys and enable their fraudulent securities scheme to succeed. SEC Compl. ¶¶ 8, 17, 105. Accordingly, Plaintiff is entitled to have this case remanded. Although Plaintiff's Motion to Remand included alternative arguments supporting remand to which Michaels responded, the court need not address these alternative arguments in light of its conclusion that there is a reasonable possibility that Plaintiff has stated a cause of action for indemnification and advancement of legal fees against Michaels.

## IV.    Attorney's Fees and Costs

Plaintiff requests an award of attorney fees and costs incurred in conjunction with the motion to remand. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir.2000). Bad faith is not "a prerequisite to awarding attorney fees and costs." *Id.* (citation omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted). In this regard, the court must decide "whether the defendant had objectively reasonable grounds to

believe the removal was legally proper" at the time of removal, "irrespective of the fact that it might ultimately be determined that removal was improper." *Valdes*, 199 F.3d at 293.

French contends that Michaels' release argument is contrary to the parties' correspondence in 2007 and 2009 and was recently fabricated. French further contends that removal of this case based on the Release was improvident and egregious given that the Release on its face pertains only to French's role as "Consultant" to Michaels. Even if Michaels had an improper motive for removing the case, the court cannot consider the motive of the removing defendant. *Valdes*, 199 F.3d at 292-93. Instead, the question is whether Michaels had objectively reasonable grounds to believe that removal was appropriate.

Michaels does not specifically address French's request for attorney's fees and costs. It nevertheless contends that French's decision to sue Michaels but not Sterling Software, "the other *diverse* public company cited in the SEC Complaint," shows that the state court action against Michaels was brought for forum shopping reasons to prevent removal. Michaels' Resp. 14. Michaels further contends that the "clear and general release executed by French in favor of Michaels forecloses the claim French seeks to bring here." *Id.* As previously noted, Michaels cited Texas Supreme Court authority to show that broad releases of claims are generally upheld in Texas. None of the cases cited, however, are directly on point in that they do not address the specific issue here when an employee wears multiple hats but releases only claims with regard to one of his roles or positions with a company. Because the court is unaware of any Texas case that has addressed this specific issue, it concludes that Michaels had an objectively reasonable basis to believe that the action could be removed. The court therefore will deny Plaintiff's request for costs and attorney's fees.

**Memorandum Opinion and Order – Page 13**

V.       **Conclusion**

For the reasons herein stated, the **grants** Plaintiff's Motion to Remand and **denies** Plaintiff's

request for attorney's fees and costs.  Pursuant to 28 U.S.C. § 1447(c), the court **remands** this action

to the 162nd Judicial District Court, Dallas County, Texas, from which it was removed.  The clerk

of the court is **directed** to effect the remand in accordance with the usual procedure.

**It is so ordered** this 8th day of January, 2013.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 14**